**Electronically Filed
Intermediate Court of Appeals
29652
31-JAN-2013
07:56 AM**

NO. 29652

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KAM CENTER SPECIALTY, CORPORATION,
a Hawai'i Corporation,
Plaintiff-Appellee, Cross-Appellant/Appellee,
vs.
LWC IV CORPORATION, a Hawai'i corporation,
dba Eastern Garden Chinese Seafood Restaurant;
LAWRENCE CHAN and LINDA CHAN,
Defendants-Appellants, Cross-Appellees

and

LWC IV CORPORATION, a Hawai'i corporation
dba Eastern Garden Chinese Seafood Restaurant;
LAWRENCE CHAN and LINDA CHAN,
Third-Party Plaintiffs-Appellants, Cross-Appellees,
vs.
JOHN E. KOBAYASHI, and V.I.P. INVESTMENTS, INC.,
a Hawai'i corporation,
Third-Party Defendants-Appellees, Cross-Appellants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 03-1-2075)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Foley and Ginoza, JJ.)

Kam Center Specialty Corporation (Kam Center) filed a summary possession complaint against LWC IV Corporation (LWC), Lawrence Chan, and Linda Chan (collectively "the Chans"). The Chans filed a counterclaim against Kam Center and a third-party complaint against John E. Kobayashi and V.I.P. Investments, Inc. (collectively, "Kobayashi"). Kam Center prevailed on its complaint and the Chans' counterclaim, and the Circuit Court of

the First Circuit (Circuit Court) entered a judgment which awarded $337,776.17 to Kam Center, including $74,562.75 in attorney's fees and costs. The Chans appealed from this judgment. The Hawai'i Supreme Court held that the Circuit Court had erred in denying the Chans' motion to amend their counterclaim to assert an unfair competition claim against Kam Center pursuant to Hawaii Revised Statutes (HRS) § 480-2 (2008),[1] but did not otherwise disturb the $337,776.17 awarded to Kam Center. Kam Center Specialty Corp. v. LWC IV Corp., No. 27439, 2007 WL 2827589, at *1 (Hawai'i Sept. 27, 2007) (mem. op.) (hereinafter, "Kam Center I").

On remand, the Chans filed an amended counterclaim which asserted a claim of unfair competition against Kam Center pursuant to HRS § 480-2. The Circuit Court ultimately granted summary judgment in favor of Kam Center on the Chans' amended counterclaim. Kam Center moved for attorney's fees pursuant to HRS § 607-14 (Supp. 2012)[2] and costs pursuant to HRS § 607-9

---

[1] HRS § 480-2 provides in relevant part:

**§480-2 Unfair competition, practices, declared unlawful.** (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

(b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

. . . .

(e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.

[2] HRS § 607-14 provides in relevant part:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the

(continued...)

(1993)[3/] and Hawaii Rules of Civil Procedure (HRCP) Rule 54(d) (2000).[4/] The Circuit Court granted the motion and awarded Kam Center $132,987.49 in attorney's fees and $4,167.38 in costs.

On appeal, the Chans argue that the Circuit Court[5/] erred in awarding attorney's fees and costs to Kam Center on the Chans' amended counterclaim for unfair competition brought pursuant to HRS § 480-2. As explained below, we conclude that: (1) the Chans' unfair competition counterclaim was not an action in the nature of assumpsit or an action on a contract that provides for an attorney's fee within the meaning of HRS § 607-14, and therefore, the Circuit Court erred in awarding attorney's

---

[2/](...continued)
action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

. . . .

The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

[3/] HRS § 607-9 provides:

No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

[4/] HRCP Rule 54(d)(1) provides in relevant part:

**(d) Costs; attorneys' fees.**

(1) COSTS OTHER THAN ATTORNEYS' FEES. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . .

[5/] The Honorable Eden Elizabeth Hifo presided.

fees to Kam Center pursuant to HRS § 607-14; and (2) the Circuit Court properly awarded costs to Kam Center pursuant to HRCP Rule 54(d) and HRS § 607-9.

BACKGROUND

I.

LWC entered into a lease agreement with Kam Center (Lease), with LWC as the "Tenant" and Kam Center as the "Landlord," for the lease of business premises. Lawrence and Linda Chan guaranteed LWC's obligations under the Lease. The Lease contained a provision regarding attorney's fees that read:

> **Tenant's Liability**. In the event Landlord is, without fault on its part, made a party to any litigation (other than condemnation proceedings) commenced by or against Tenant arising out of Tenant's occupancy of the demised premises or any act of Tenant or any person taking by, through or under it concerning the demised premises or this Lease, or in the event suit is brought for recovery of possession of the demised premises, for the recovery of rent or any other amount due under the provisions of this Lease, or for enforcement of any covenant or condition of this Lease, or because of the breach of any covenant herein contained, on the part of Tenant, Tenant shall indemnify, save harmless and defend Landlord, and shall pay to Landlord all expenses incurred in connection therewith, including reasonable attorneys' fees.

The Chans operated a restaurant on the premises they leased from Kam Center.

Soon after the Chans entered into the Lease, their restaurant began losing money. The Chans hired Kobayashi, their long-time real estate broker, as their agent to negotiate a lower rent with Kam Center. Kobayashi negotiated an amendment to the Lease, which reduced the monthly rent for a period of time in exchange for payment of percentage rent and 50 percent of the net proceeds of sale, if the Lease was sold. The Chans also entered into an exclusive listing agreement with Kobayashi, seeking to sell the Lease for $200,000 and authorizing Kobayashi to find a new tenant for the premises. The listing agreement provided that Kobayashi could only represent the Chans, unless the existence of dual agency was disclosed.

4

The Chans continued to experience difficulties even after Kobayashi negotiated the reduced rent. The Chans eventually stopped paying rent and closed the restaurant while Kobayashi continued his efforts to sell the Lease. The Chans through Kobayashi sought to negotiate further rent concessions with Kam Center in furtherance of their plans to renovate the premises and reopen as a lower-priced restaurant. While these negotiations were ongoing, Kam Center advised the Chans that it was considering terminating the Lease due to the Chans' delinquency in rent payments.

Meanwhile, Coffee Partners Hawai'i (Starbucks) became interested in leasing the premises leased to the Chans. Starbucks's agent sent Kobayashi a letter of intent (LOI), which incorrectly identified Kobayashi as Kam Center's broker, offering to negotiate a new lease for the premises. Kobayashi gave the LOI to Kam Center's attorney and suggested terms for a counteroffer. The Chans sent Kam Center a letter regarding the date it planned to complete the renovations and its proposal to pay double rent when the new restaurant opened, which would bring their rent current after six months. Upon receiving a copy of the letter, Kobayashi suggested that the Chans stop the renovations because Starbucks was interested in purchasing their Lease. The Chans stopped their renovations.

Kam Center gave Kobayashi a counteroffer to the LOI to deliver to Starbucks. The counteroffer correctly identified Kobayashi as acting as the agent for the Chans and also stated that the Chans would pay the real estate commissions.[6] Kobayashi delivered the counteroffer to Starbucks. Kobayashi later informed the Chans that Starbucks was obtaining a new lease directly from Kam Center and that the Chans were still liable for the back rent owed on the Lease. The Chans made a $10,000 partial payment of rent to assist Kobayashi in attempting to

---

[6] The Chans deny ever representing that they would pay the brokerage commission for Starbucks's new lease.

5

negotiate a rent concession, but Kam Center demanded full payment. The Chans did not make further rent payments, and Kam Center terminated the Lease.

## II.

Kam Center filed a complaint against the Chans for summary possession, unpaid rent, and other charges due under the Lease.[1] The Chans filed a first amended answer, a counterclaim against Kam Center, and a third-party complaint against Kobayashi. In their counterclaim against Kam Center, the Chans alleged (1) tortious interference, (2) negligence, and (3) punitive damages. In their third-party complaint against Kobayashi, the Chans alleged (1) breach of fiduciary duties and (2) unfair and deceptive acts or practices.

The Chans filed a motion for leave to file a second-amended answer, an amended counterclaim, and an amended third-party complaint. Relevant to the instant appeal, the Chans sought to add a claim for unfair competition pursuant to HRS § 480-2 against both Kam Center and Kobayashi. The Circuit Court denied the Chans' motion. The Circuit Court entered summary judgment in favor of Kam Center on its complaint and the Chans' counterclaim. Kam Center filed a motion seeking the attorney's fees and costs it incurred in pursing the complaint and defending against the counterclaim. The Circuit Court granted Kam Center's motion and awarded it $68,571.10 in attorneys' fees and $5,991.65 in costs, and it incorporated this award into the judgment it entered.

The Chans appealed from this judgment. The Hawai'i Supreme Court issued its Memorandum Opinion, in which it: (1) reversed the Circuit Court's order denying the Chans' motion for leave to file an amended counterclaim to add a claim for unfair competition against Kam Center; but (2) affirmed the Circuit Court's grant of summary judgment in favor of Kam Center on (a)

---

[1] Kam Center filed its complaint in the District Court of the First Circuit, but the case was later transferred to Circuit Court.

Kam Center's complaint for summary possession and damages and (b) the Chans' existing counterclaims; and (3) left undisturbed the award of attorney's fees and costs to Kam Center. Kam Center I, 2007 WL 2827589, at *1, *27-28.

### III.

On remand, the Chans filed an amended counterclaim against Kam Center for unfair competition pursuant to HRS § 480-2(e) (hereinafter, the "amended counterclaim" or the "unfair competition counterclaim"). The Chans alleged that at all relevant times, the Chans operated a restaurant at the leased premises; that they hired Kobayashi, a licensed real estate broker, to assist them in the sale and/or renegotiation of the Lease; that the Chans intended to continue operating a restaurant if a new investor could not be found; and that Kobayashi was in a fiduciary relationship with the Chans and owed them a duty of care to use his best efforts on the Chans' behalf and to refrain from representing parties with adverse interests. The Chans further alleged that:

> 9. [Kam Center] knew or had reason to know of the fiduciary relationship between [the Chans] and [Kobayashi].
>
> 10. [Kam Center] and [the Chans] were in competition with each other for a new investor for the subject premises.
>
> 11. Alternately and/or in addition, [Kam Center] and [the Chans] were also in competition with respect to the subject premises as [the Chans] intended to continue operating a restaurant if [the Chans] could not sell the Lease while [Kam Center] wanted to terminate the Lease and/or reacquire the premises in order to be able to lease the premises to a new investor.
>
> 12. [Kam Center] encouraged, induced and/or caused [Kobayashi] to breach [his] fiduciary duties and duties of absolute loyalty to [the Chans] in order to compete with [the Chans] for a new investor for the subject premises.
>
> 13. In addition and/or conjunction with the above, [Kam Center] wrongfully used [Kobayashi] to obtain a new investor for the subject premises.
>
> 14. After wrongfully obtaining the new investor, [Kam Center] terminated the Lease and evicted [the Chans] from the subject premises, causing [the Chans] to suffer substantial loss to their business and/or property.

7

15.   [Kam Center] would not have terminated the Lease and evicted [the Chans] had [Kobayashi] not breached [his] fiduciary duties to [the Chans] and/or had [Kam Center] not been able to take advantage of [Kobayashi's] breach of those duties.

16.   The acts or omissions of [Kam Center] complained of above constitute unfair methods of competition and violated and/or are actionable under Chapter 480, HRS, including but not limited to HRS § 480-2(e) and HRS § 480-13.[8/]

The Chans' amended counterclaim requested "treble damages against [Kam Center] in amounts to be proven at trial, as well as their costs and such other and further relief as the court deems appropriate."

In response to an interrogatory, the Chans explained that they were seeking damages of $706,768.98, comprised of: (1) the lost profits that the Chans would have made if the Lease had not been terminated and they had reopened with the lower-priced restaurant; (2) the $337,776.17 awarded to Kam Center in the prior judgment in the case; and (3) fees and costs awarded to Kam Center on appeal.  Kam Center filed a series of three motions for summary judgment with respect to the amended counterclaim.  The Circuit Court denied the first motion; granted the second motion with respect to the Chans' second and third items of alleged damages; and granted the third motion with respect to the first item of alleged damages for lost profits, ruling that the Chans could not prove lost profits with reasonable certainty.  Having granted summary judgment with respect to all of the damages

---

8/ HRS § 480-13 (2008) provides in relevant part:

(a) . . . any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:

(1)   May sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit[.]

alleged by the Chans, the Circuit Court dismissed the Chans' unfair competition counterclaim against Kam Center.[9/]

Kam Center filed a motion for the award of attorney's fees and costs it incurred in defending against the Chan's amended counterclaim. Kam Center sought its attorney's fees pursuant to HRS § 607-14 and its costs pursuant to HRCP Rule 54(d) and HRS § 607-9. The Chans opposed the motion. The Circuit Court awarded Kam Center $132,987.49 in attorneys' fees and $4,167.38 in costs, for a total award of $137,154.87. The Circuit Court entered its Final Judgment on February 13, 2009 (Final Judgment), and this appeal followed.

DISCUSSION

On appeal, the Chans contend that the Circuit Court erred in awarding attorney's fees and costs incurred by Kam Center in defending against the Chans' unfair competition counterclaim. We review an award of attorney's fees and costs under the abuse of discretion standard. Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawai'i 251, 266, 151 P.3d 732, 747 (2007). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 253, 990 P.2d 713, 723 (1999) (internal quotation marks and citation omitted). We conclude that the Circuit Court abused its discretion in awarding attorney's fees to Kam Center, but that it properly awarded costs to Kam Center.

---

[9/] In the Chans' first appeal, the Hawai'i Supreme Court also ruled that the Circuit Court had erred in denying the Chans' motion to amend their third-party complaint to assert an unfair competition claim against Kobayashi and in granting summary judgment in favor of Kobayashi on the Chans' claims in their third-party complaint for breach of fiduciary duty and punitive damages. Kam Center I, 2007 WL 2827589, at *1-2, *28. On remand, the Chans filed an amended third-party complaint asserting an additional claim against Kobayashi for unfair competition and proceeded to trial against Kobayashi on the amended third-party complaint. The jury returned a special verdict finding that Kobayashi had breached the fiduciary duty owed to the Chans, but that this breach was not a legal cause of damages to the Chans. The Chans subsequently entered into a settlement with Kobayashi, which resulted in the dismissal of the Chans' appeal against Kobayashi and Kobayashi's cross-appeal against the Chans. Therefore, the litigation between the Chans and Kobayashi is not in issue.

Kam Center has cross-appealed. In its cross-appeal, Kam Center argues that the Circuit Court erred in denying Kam Center's first motion for summary judgment and in failing to grant Kam Center's second motion for summary judgment in its entirety, with respect to the Chans' unfair competition counterclaim. We conclude that Kam Center's cross-appeal is moot. The Chans did not appeal the Circuit Court's grant of summary judgment in favor of Kam Center on the Chans' unfair competition counterclaim, and therefore, the Circuit Court's Final Judgment in favor of Kam Center on the unfair competition counterclaim stands. The question of whether the Circuit Court should have fully granted Kam Center's earlier motions for summary judgment is immaterial and will not be addressed.

I.

Generally, under the "American Rule," each party to a lawsuit is responsible for paying his or her own litigation expenses. Sierra Club v. Dep't of Transp. of State of Hawai'i, 120 Hawai'i 181, 218, 202 P.3d 1226, 1263 (2009). One of the exceptions to this general rule is when a statute authorizes attorney's fees to be chargeable against the opposing party. Id. In this case, Kam Center sought the award of attorney's fees it incurred in defending against the Chans' unfair competition counterclaim pursuant to HRS § 607-14. See Kaanapali Hillside Homeowners' Ass'n ex rel. Bd. of Dirs. v. Doran, 114 Hawai'i 361, 370-71, 162 P.3d 1277, 1286-87 (2007) (concluding that a prevailing party is only entitled to the award of attorney's fees based on the grounds asserted).

HRS § 607-14 provides in relevant part that "[i]n all the courts, in all actions in the nature of assumpsit and in all actions on a . . . contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]" (Emphasis added.) As it argued in the Circuit Court, Kam Center argues on appeal that it was entitled to

10

attorney's fees under both the "assumpsit prong" and the "contract prong" of HRS § 607-14.  We disagree.

A.

Under the assumpsit prong of HRS § 607-14, the prevailing party is entitled to the award of attorney's fees "in all actions in the nature of assumpsit."  In construing HRS § 607-14, the Hawai'i Supreme Court has stated that "'assumpsit' is 'a common law form of action which allows for the recovery of damages for *non-performance of a contract*, either express or implied, written or verbal, as well as quasi contractual obligations.'"  TSA Int'l, 92 Hawai'i at 264, 990 P.2d at 734 (citation omitted; emphasis in original).  In ascertaining the nature of the proceeding, we look to "the essential character of the underlying action in the trial court.  The character of the action should be determined from the facts and issues raised . . . , the nature of the entire grievance, and the relief sought."  Blair v. Ing, 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001) (internal quotation marks and citations omitted).

"The mere fact that [the underlying claims] relate to a contract between the parties does not render a dispute between the parties an assumpsit action."  TSA Int'l, 92 Hawai'i at 264, 990 P.2d at 734.  The Hawai'i Supreme Court has held that an action is not in the nature of assumpsit where the underlying claims "do not involve monetary damages based upon the non-performance of a contractual or quasi-contractual obligation (*i.e.*, breach of contract)."  Id.; see also Kahala Royal Corp., 113 Hawai'i at 282, 151 P.3d at 763.

Here, prior to the proceedings on remand, Kam Center's complaint for summary possession and damages based upon the Chans' breach of the Lease had been resolved and Kam Center had been awarded the attorney's fees it incurred before the remand. On remand, the sole claim raised by the Chans in their amended counterclaim was a claim for unfair competition pursuant to HRS § 480-2.  The Chans' unfair competition counterclaim against Kam Center is not a claim for monetary damages based upon a breach of

11

<u>contract or the non-performance of a contractual or quasi-</u>
<u>contractual obligation</u>. Instead, it is a claim based on the
violation of a statutory duty created by HRS § 480-2 to refrain
from engaging in unfair methods of competition for which the
Chans sought statutory remedies set forth in HRS § 480-13.
Although the Chans' amended counterclaim relates to the Lease,
which the Chans allege was terminated as a consequence of Kam
Center's unfair competition, the Chans' amended counterclaim does
not allege that Kam Center breached the Lease and does not seek
damages based on the breach of any obligation arising out of the
Lease.

Under these circumstances, we conclude that the Chans'
unfair competition counterclaim under HRS § 480-2 was not an
action in the nature of assumpsit within the meaning of HRS
§ 607-14. <u>See</u> <u>Kahala Royal Corp.</u>, 113 Hawai'i at 282, 151 P.3d
at 763 (concluding that a complaint alleging a claim of unfair
methods of competition under HRS Chapter 480 was not an action in
the nature of assumpsit under HRS § 607-14); <u>Leibert v. Finance</u>
<u>Factors, Ltd.</u>, 71 Haw. 285, 287, 294, 788 P.2d 833, 835, 838
(1990) (stating that prevailing plaintiffs in an action for
unfair and deceptive business practices brought under HRS § 480-2
were not entitled to statutory attorney's fees in assumpsit under
HRS § 607-14); <u>see also</u> <u>Walker v. Countrywide Home Loans, Inc.</u>,
121 Cal Rptr. 2d 79, 95 (Cal. Ct. App. 2002) (stating that "where
a plaintiff sues solely under the unfair competition law,
[attorney's] fees may not be recovered by a prevailing
defendant"). Accordingly, Kam Center was not entitled to the
award of attorney's fees under the assumpsit prong of HRS § 607-
14.

B.

Based on essentially the same analysis, we also
conclude that Kam Center was not entitled to the award of
attorney's fees under the contract prong of HRS § 607-14. Under
the contract prong, a prevailing party is entitled to the award
of attorney's fees "in all actions on a . . . contract in writing

12

that provides for an attorney's fee[.]" HRS § 607-14. Here, the Chans' unfair competition counterclaim was not an action on a contract, but rather was an action based on Kam Center's alleged violation of its statutory duty under HRS § 480-2 to refrain from engaging in unfair methods of competition.

### C.

For the foregoing reasons, Kam Center was not entitled to the award of attorney's fees under either the assumpsit prong or the contract prong of HRS § 607-14. We conclude that the Circuit Court abused its discretion in awarding to Kam Center under HRS § 607-14 the attorney's fees Kam Center incurred on remand in defending against the Chans' unfair competition counterclaim. Accordingly, we reverse the Circuit Court's award of $132,987.49 in attorney's fees to Kam Center.[10/]

### II.

The Chans also challenge the Circuit Court's award of $4,167.38 in costs to Kam Center. HRCP Rule 54(d)(1) provides that "[e]xcept when express provision therefor is made either in a statute or in [the HRCP], costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" (Emphasis added). The Chans do not dispute that Kam Center was the prevailing party with respect to the amended counterclaim or the reasonableness of the cost items on which Kam Center's award of costs was based. Instead, the Chans contend that the award of costs to Kam Center should be precluded as a violation of public policy embodied in HRS Chapter 480.

HRS § 480-13(a)(1) provides that a prevailing plaintiff who has brought a claim under HRS Chapter 480 is entitled to recover "reasonable attorney's fees together with the costs of

_____

[10/] In light of our decision, we need not address the Chans' contention that the award of attorney's fees to Kam Center violated public policy as embodied in HRS Chapter 480.

13

suit[.]"   The Chans infer that because HRS Chapter 480 only authorizes a prevailing plaintiff raising HRS Chapter 480 claims to recover costs, HRS Chapter 480 establishes a public policy that precludes the award of costs to Kam Center.   We disagree.

The Hawai'i Supreme Court has concluded that "[HRCP] Rule 54(d) creates a strong presumption that the prevailing party will recover costs[.]"  Wong v. Takeuchi, 88 Hawai'i 46, 52, 961 P.2d 611, 617 (1998) (block quote format, brackets in original, and citation omitted); Pulawa v. GTE Hawaiian Tel, 112 Hawai'i 3, 19, 143 P.3d 1205, 1221 (2006).   This presumption "must be overcome by some showing that an award would be inequitable under the circumstances.   The losing party bears the burden of making this showing."  Wong, 88 Hawai'i at 52, 961 P.2d at 617 (block quote format omitted).

The Chans do not cite any case precluding the award of costs to a prevailing defendant[11] in an action brought under HRS Chapter 480 or an analogous statutory scheme.   HRS Chapter 480 does not expressly preclude the award of costs to a prevailing defendant, and we are not persuaded by the Chans' argument that the public policy they infer from HRS Chapter 480 is strong enough to override the provisions of HRCP Rule 54(d)(1).   In addition, the Chans do not present any basis for this court to conclude that the Circuit Court's award of costs was "inequitable under the circumstances."   See Wong, 88 Hawai'i at 52, 961 P.2d at 617 (block quote format omitted); HRS § 607-9.   We conclude that the Circuit Court did not abuse its discretion in awarding costs of $4,167.38 to Kam Center pursuant to HRCP Rule 54(d)(1), and we affirm the award of costs.

CONCLUSION

For the foregoing reasons, we reverse the Circuit Court's Final Judgment to the extent that it enters judgment in

---

[11] By "prevailing defendant" we mean a prevailing party against whom a claim under HRS Chapter 480 was brought.

favor of Kam Center for attorney's fees in the amount of
$132,987.49.   We affirm the Final Judgment in all other respects.

DATED: Honolulu, Hawai'i, January 31, 2013.

Steven K.S. Chung
Chanelle M. Chung
for Defendants/Third-Party
    Plaintiffs-Appellants/
    Cross-Appellees

James H. Ashford
Amanda M. Jones
(Cades Schutte)
for Plaintiff-Appellee/
    Cross-Appellant

*Craig H. Nakamura*

Chief Judge

*Daniel R. Foley*

Associate Judge

Associate Judge

15